No. 59.—John Doe ex dem. William D. Conyers, adm'r. of An-
drew Smith, deceased, *vs.* Richard Roe, casual ejector, Rich-
ard Kennon and Addison Kennon, tenants in possession.

Against the right of action to recover the property of an intestate, the statute of limita-
tions will not commence to run until administration of his estate has been granted.

*By the Court*—Lumpkin, Judge.

This was an action of ejectment, tried at March Term, 1846, of New-
ton Superior Court, before Judge Merriwether, to which the defendant
pleaded the statute of limitations. The plaintiff introduced and read in
evidence a grant from the State of Georgia, to his intestate, Andrew Smith,
of letters of administration to himself, on the estate of Smith, bearing
date in 1838 ; and having proved possession of the premises in dispute by
the defendants, at the time he sued out his writ, closed his case. The
defendants, in support of their plea, offered a deed to the land from
Charles Kennon to Richard Kennon, dated in 1836, and proved that the de-
fendants had continued in peaceable occupancy thereof, from that period
to the time of the trial. They also exhibited conveyances from various
persons, purporting to be the heirs at law of Andrew Smith, the grantee,
to one Anderson.

The plaintiff, in rebuttal, had the testimony of Thomas King taken by
commission, who swore that Andrew Smith died in 1829 or 1830, and the
case having been submitted upon this statement of facts, the court charged
the jury, "That if the defendants had been in possession of the premises
for more than seven years, under the deed from Kennon, they were pro-
tected under the statute of limitations, although the drawer of the lot was
dead, and no administration was taken on his estate, till within seven
years of the commencement of the action." To this opinion the plaintiff
excepted ; and the propriety of that charge is the question now presented
for our decision.

Whether *heirs at law* can maintain ejectment for land in this State, has
long been a debatable point with the profession. That the *administrator*
can sell, has never been seriously doubted by the courts. It would be
strange if it were, seeing that real and personal estate are both placed by
our law upon the same footing, and constitute assets in the administrator's
hands ; first, for the payment of the debts of the intestate, and then for
distribution of the surplus among the next of kin and distributees. And
to effectuate these ends, the administrator is clothed with authority, under
the sanction of the Ordinary, to sell and *convey* to purchasers *legal* title to
the *real*, as well as personal, estate of his intestate. Against a suit at the
instance of the representative, can the statute commence to run, until the
right is vested in the representative to maintain an action ? The court
thinks not. It is the grant of administration which gives the right to sue,
and the plaintiff's letters are a part of his title.

We fully appreciate the justice and policy of statutes of limitation. It
has been truly said, that there are none, whose operation is so wide, so
beneficial, and so peaceful. They well deserve the high appellation be-
stowed upon them by the civil law, *saluberrima lex;* and I am not sure

but that the wisdom of the Athenians is worthy of imitation, in prescrib-
ing a certain limit as the *ne plus ultra,* at the expiration of which, a party
should be exempt from all legal harassment.    The public repose would
be an ample apology for such a sweeping exaction from all the world.

The doctrine is, that where the statute begins to run, its operation is
not arrested, even where there is a legal impossibility to assert the right.—
*Livingston* vs. *Robin,* 15 *Johns. Rep.* 169 ; *Celdon* vs. *Moore,* 13 *Johns.
Rep.* 514 ; *Marsteller* vs. *McLean,* 7 *Cranch,* 156.    But where there is no
one *in esse* to assert the rights of the intestate, they cannot of course be
presumed to be taken away by any supposed acquiescence in the adverse
possession of the defendant.—4 *Mod.* 376 ; *Carth.* 335 ; *Skinner,* 535 ;
3 *Hill's Rep.* 346.  Where money of a person who had died intestate had
been received by the defendant before administration was granted—it was
held that the statute of limitation should not begin to run from the time
of receiving the money ; *for then no one had a title to receive it ;* but it
should begin from the time of administration granted.—*Curry* vs. *Ste-
phenson,* 2 *Salk.* 421.    Lord Bacon, in commenting upon this authority,
says: " Had the money been received in the lifetime of the person who
died intestate, that person would have had a right of action vested in him,
and from that period the time of limitation would have commenced, and
the statute would have been a bar.    For when once the time of limita-
tion has begun to run, it suffers no interruption from the death of the
claimant ; nor does it revive in favor of any person upon whom the right
of claim may devolve.    In Hickman against Walker, where the statute
of limitations was pleaded to an action brought by an executor on a
promise made to his testator, the court ruled that the six years should be
computed from the time when the cause of action arose, and not from
the time of obtaining the probate of the will.—*Willes,* 27.

This distinction, so clearly established by reference to the authorities,
would not have been deemed necessary, but for the respect so deservedly
entertained for the able and acute judge, who pronounced the opinion we
are combatting.

It is contended, however, that our own statute has settled this question.
—*Prin. Dig.* 513.    It enacts that the action of ejectment shall be brought
within seven years after the cause of action accrues, and that the right of
entry shall be taken away after that time, unless the person entitled to
sue, shall, at the time the right accrues, be within the age of twenty-one
years, *feme covert, non compos mentis,* or imprisoned.    The inference and
argument is, that inasmuch as executors and administrators are not em-
braced in the *saving clause,* as it is called, that the statute runs of course
against them.    But our answer is, that the statute itself, *in totidem verbis,*
allows the representative seven years to bring ejectment, *as his right, as
such,* does not accrue until he is qualified.    There can be no cause of
action until the person in possession withholds the premises from the real
owner.    It would be judicious, perhaps, for the General Assembly to limit
the time, within which representatives should sue, *after obtaining letters.*
But the law gives the party *seven* years, nor can this court allow less,
until commanded to do so by the supreme power in the State.    Our stat-
ute of limitations is, with some few alterations, copied from the English
statutes of 21 *Jac.* 1, ch. 16, and 32 *Henry* 8, ch. 2, which is *in pari
materia ;* and the only difference upon the subject immediately under con-

sideration is, that seven years are substituted for twenty. We leave the matter to be disposed of by those whose duty it is to declare, not what the law is, but what it shall be. Believing, however, as we do, with Lord Holt, that the statute of limitations is one of the best of statutes, (7 *Modern*, 12,) and, with Mr. Justice Wilmot, that it is a noble, beneficial act, (1 *Black. R.* 187,) we are not prepared to say, that a former administration would not be presumed, after the lapse of a great length of time, in order to protect the title of the occupant. Courts in our sister States have intimated such a purpose. Even grants are presumed for the purpose of quieting ancient possessions. Moreover, we are not quite clear, that chancery would not grant a perpetual injunction, notwithstanding its reluctance to restrain legal rights, in a case where the *heirs at law* have conveyed, or are barred, and *there are no creditors.*

Judgment reversed.

WILLIAM W. CLARK, for the plaintiff in error.

ANGUS M. D. KING and ――― JONES, for the defendants in error.