BULLOCK & COMPANY *et al. v.* DUNBAR, administrator.

1. The old doctrine that a defendant in possession should be protected against an action instituted by the administrator of him who died clothed with the legal title to the property in dispute, when it appeared that the administration was stale and had been obtained for fraudulent or speculative purposes, did not apply in any case where the defendant's possession had not been of sufficient duration to support a title in him by prescription. The provision in the limitation act of 1856 that "a prescription does not run against an unrepresented estate until representation, provided the lapse does not exceed five years," was curative of the evil which rendered it necessary before the passage of that act to invoke the doctrine referred to above.

2. Under the undisputed facts of the present case, the plaintiff was entitled to a recovery in some amount, and it does not appear that the sum named in the verdict was excessive.

3. Though an action may have been instituted in pursuance of a contract affected with champerty, it is, if otherwise meritorious, maintainable; for, while the courts will not enforce such a contract when it is the basis of the action, the rule on this subject does not apply in a case wherein the champertous contract is not itself invoked or relied upon.

4. In the trial of an action brought by an administrator and involving title to land, the defendant can not show legal title in himself by proving that he and those under whom he claims had for many years paid the taxes on the prop-

erty in dispute ; nor by proving that neither the plaintiff nor his intestate had ever paid such taxes ; nor by proving that the land in question had never been in the actual possession of the intestate and had never been inventoried as a part of his estate ; nor by introducing deeds or other documents which in no way connect the defendant with the true legal title.

5. Even if error be committed in compelling an attorney for a defendant to produce a document to be introduced in evidence by the plaintiff, a new trial will not for this reason be granted when the defendant in his answer admits the existence of the document and fully sets forth all of its contents which are material to the issue in controversy.

6. When, pending an action against a partnership, one of the members thereof who had been served died, and his administratrix, in answer to a scire facias requiring her to show cause why she should not be made a party defendant, set up that the plaintiff's cause of action would have been barred if the suit had not been brought until the time when the scire facias was sued out ; that the intestate's estate had been fully administered before the service of the scire facias and without notice of the plaintiff's demand ; and that the partnership and the surviving members thereof had sufficient assets to satisfy any verdict which the plaintiff might obtain : *Held*, that even if the administratrix was under these circumstances neither a proper nor a necessary party, causing her to be made a party defendant affords no ground for granting her a new trial, when by the verdict returned a plea of plene administravit, which she filed in defense to the main action, was sustained.

7. Error in entering up a judgment is not a good ground for a new trial.

8. All the material points in this case which were properly made are covered by the rulings above announced.

Argued January 10, — Decided February 7, 1902.

Equitable petition. Before Judge Roberts. Wilcox superior court. August 1C, 1901.

*J. H. Martin* and *DeLacy & Bishop*, for plaintiffs in error.
*Eason & McRae,* contra.

LUMPKIN, P. J.    An equitable action was brought in the superior court of Wilcox county by W. L. Dunbar as administrator de bonis non of Thomas S. Dunbar, deceased, against Bullock & Company, a firm composed of E. W. Bullock, R. L. Bush, and A. Peacock, to enjoin the defendants from cutting, boxing for turpentine, or otherwise interfering with the timber on two lots of land described in the petition; and for the recovery of damages for trespasses alleged to have been committed upon these lots before the suit was begun.    The defendants denied all the allegations of the petition upon which a recovery could be predicated.    Pending the action R. L. Bush died, and his administratrix, Mrs. Sarah C. Bush, was made a party defendant.    She filed a plea of plene administravit.    The court, after the testimony was closed, instructed the

jury that the plaintiff was entitled to a recovery, but left them to fix the amount of the damages from the evidence. They returned the following verdict: "We, the jury, find verdict in favor of plaintiff damage to the amount of $305.00. Also we, the jury, find for Mrs. Sarah C. Bush the plea of plene administravit." The defendants moved for a new trial, their motion was overruled, and they excepted. We will now deal with the material questions presented by the motion and, in so doing, state such additional facts as may be necessary to an understanding of our ruling upon each of the points decided.

1, 2. The plaintiff proved that the lots in controversy were granted by the State of Georgia to his intestate on June 14, 1849, and that he had been duly appointed administrator. It also appeared that there had been previous administrations upon the estate of Thomas S. Dunbar, who died in 1858 or 1859. The plaintiff's letters of administration were dated August 31, 1894. The main defense was, that Thomas S. Dunbar, the grantee of the State, had conveyed the lots in question to one Burnside, under whom the defendants claimed title. There was, however, in evidence no deed or other paper showing that Dunbar, the grantee, had ever parted with title to the land. Unless, therefore, some of the special grounds of defense, which will be noticed in their order, were available for the defendants, the court was right in instructing the jury that the plaintiff was entitled to a recovery. It was seriously insisted that, inasmuch as the grantee died about thirty-six years before letters of administration were granted to the plaintiff, the administration was stale; and in this connection the defendants offered an amendment to their answer, setting up that this administration was obtained for speculative purposes, at the instance of one Hitt and one Davis, in pursuance of an agreement between them and W. L. Dunbar that they were to bear the expenses of the litigation and share its proceeds, if successful, with him. This amendment was rejected, the court holding, that inasmuch as the plaintiff had shown a perfect legal paper title in his intestate, it was incumbent upon the defendants to show a paper title out of him, or title by prescription. There was no attempt on the part of defendants to set up a title of this latter character. Reliance was had on the decisions of this court in the cases of *Woolfolk* v. *Beatly,* 18 *Ga.* 520, and *Daniel* v. *Sapp,* 20 *Ga.* 515. In these cases it was ruled that long

acquiescence or laches by parties out of possession could not be excused, without showing some actual hindrance or impediment in the way of bringing action; and that such parties would not be allowed to prosecute under a speculative or stale administration, as against those who had been long enough in possession to set up'a prescriptive title against others. The case of *Jonekin* v. *Holland*, 7 *Ga.* 589, is also on the same line, as are those of *Pierce* v. *Jones*, 23 *Ga.* 374, and *Murdock* v. *Mitchell*, 30 *Ga.* 74; and see, in this connection, *Payne* v. *Ormond*, 44 *Ga.* 514. An examination of all of these cases will show that the rulings therein made were predicated upon the idea that, as the law then stood, no prescription could be set up against an unrepresented estate, and consequently equity would interpose in behalf of those who had been in possession during the regular statutory periods, and who as against all others but an administrator, who took out letters after long delay, had a perfect defense. It is undoubtedly true that before the limitation act of 1856 (Acts of 1855-6, p. 233), a prescription did not run against an unrepresented estate. So much of the 21st section (page 235) of that act as bears on this question is now embodied in the Civil Code, § 3595, which declares that "A prescription does not run against an unrepresented estate until representation, provided the lapse does not exceed five years." In the cases of *Conyers* v. *Kennon*, 1 *Ga.* 379, *Cofer* v. *Thurmond*, Id. 538, *Garland* v. *Milling*, 6 *Ga.* 310, and *Miller* v. *Surls*, 19 *Ga.* 331, all of which were decided before the act of 1856, it was distinctly ruled that a prescription did not run against an estate before the grant of letters to an administrator, where it appeared that the intestate died before the adverse possession of the defendant began.

A careful examination of all of the above-cited cases will plainly show that, in those relied on by the plaintiff in error and others of like nature, this court was simply striving to give equitable relief to defendants who had been long in possession of the property sued for, by holding that they should be protected from what was termed a stale administration collusively obtained for fraudulent or speculative purposes. It is manifest that the trend of the court in this direction arose simply from the fact that unrepresented estates were, under strict rules of law, unaffected by statutes of prescription or limitation. We have been unable to find a single case in which the equitable rule there laid down, and here invoked, was ap-

plied in favor of a defendant who had been in possession for a time less than the statutory period. It results from the foregoing, that, so far as this branch of the case is concerned, the court was right in holding that the plaintiff had made out a case entitling him to a recovery, and also right in rejecting the proposed amendment to the answer. As to the amount of the verdict, there was sufficient evidence to support the jury's finding in the sum above specified.

3. There is no merit in the contention, stoutly insisted upon by counsel for the defendants, that the plaintiff's action was not maintainable because affected with champerty. It was, in the case of *Ellis* v. *Smith*, 112 *Ga.* 480, in substance ruled that though an action may have been instituted in pursuance of a champertous contract, it could not for this reason be defeated, if otherwise meritorious. It is undoubtedly true that the courts will not enforce such a contract where it is the foundation of an action or defense; but the rule relating to contracts of this nature is not applicable in a case where the champertous contract is neither invoked nor relied upon.

4. In several grounds of the defendant's motion for a new trial the points covered by the fourth headnote were in various forms presented. It is obvious that all of the contentions of counsel with respect thereto are devoid of merit. When the plaintiff in an action involving title to land makes out a prima facie case of title in himself, and the defendant seeks to show that he has a better title, the latter must do so by showing paper title in himself, title by prescription or under the laws of descent, or, as against the plaintiff, a perfect equity. He can not in any other way establish ownership of the property in dispute. Clearly, then, the trial court did not err in holding that the defendants could not defeat the plaintiff's action by proving that they and those under whom they claimed had for many years paid the taxes on the lots in dispute; nor by proving that neither the deceased, Thomas S. Dunbar, nor the plaintiff, his administrator, had ever paid such taxes; nor by showing that the land in question had never been in the actual possession of the intestate, and had never been inventoried as a part of his estate. Nor would it have been of any avail to the defendants to introduce deeds or other documents which in no way served to connect them with the true legal title.

5. During the progress of the trial the plaintiff tendered in evi-

dence certified copies of plats and grants from the State of Georgia to Thomas S. Dunbar. These were objected to on the ground that the originals had not been accounted for. Thereupon counsel for the plaintiff called upon the defendants to produce the original plats and grants, the latter admitting that the same were in court. The presiding judge required the production of these papers, and they were introduced in evidence. Defendants assign error upon the action of the judge in compelling their counsel to produce the documents and deliver them to counsel for the plaintiff. We are not prepared to hold that the ruling here complained of was correct; but, in view of another fact, we are quite clear that a new trial should not on this account be ordered. In an amendment to their answer, the defendants alleged that "the original plats and grants from the State of Georgia to the land in controversy to Thos. S. Dunbar are in the possession and proper custody of these defendants, and form a part of their muniments of title to said land and timber." In view of this admission, it was not incumbent on the plaintiff to show affirmatively that the lots in dispute had been granted to his intestate. This much of his case was admitted by the defendants, and the admission plainly covered everything material which was evidenced by the plats and grants themselves.

6. As stated above, R. L. Bush, one of the members of the partnership against which the action was brought, died while it was pending. In response to a scire facias sued out against Mrs. Bush, as administratrix of his estate, requiring her to show cause why she should not be made a party defendant to the action, she filed an answer setting up, in substance, certain grounds which are sufficiently outlined in the sixth headnote. Clearly the point as to the statute of limitations was without merit. Whether under the facts set forth in her answer and relied upon by her, it was either necessary or proper to make her a party defendant to the action, the fact that the court did so affords no cause for ordering a new trial in this case; for, as will have been seen, she filed a plea of plene administravit, which the jury sustained. It is therefore impossible for her or her intestate's estate to be injuriously affected by the verdict or judgment rendered; and it is equally true that making Mrs. Bush a party was not prejudicial to the partnership or the surviving members thereof.

7. Another ground of the motion complains that the judgment,

in so far as it relates to the administratrix, does not follow the verdict. Clearly, this constitutes no reason for granting a new trial. If it be true that the judgment fails in any respect to follow the verdict, the point should have been made by direct exception, which was not done.

8. We have dealt with all the grounds of the motion for a new trial in which questions of any materiality are properly made, and in so doing have ruled upon every contention in the case deserving of notice. The truth is, that upon its undisputed facts it turns upon the law laid down in the first headnote. We find no error in the judgment denying a new trial.

*Judgment affirmed. All the Justices concurring.*